The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Catherine E. Zienoff presiding. Good morning. Before we go any further, I just wanted to note that counsel for the Eppley's picture is blurred and not clear. And I don't know if it's everybody else is clear on my screen. I apologize. I think there's something wrong with the feed that I get through Zoom. I've had this problem. Okay, I've had office meetings also, so I've tried to remedy the situation. It's just not worked. So I apologize for that. Sorry, as long as you know, and I've made notes, so I haven't officially started here, but I will. Okay. Thank you. All right. Good morning. This is case number 4-250772. And it is people of the state of Illinois versus Jeffrey T. Bennett. Would counsel for the appellant identify yourself for the record, please? Nicholas C. Rover, Jr. for the appellant. Thank you and counsel for Eppley. Claire Wesselick-Conley for the appellate. Thank you. Mr. Rover, you may begin your argument. Thank you, Justice Zenoff. Firstly, the appeal stems from a motion to quash a search warrant and to suppress evidence that was denied by the trial court. In this case, just a brief factual background on August 1st. Counsel, I apologize for interrupting, but there are so many issues in this case, and I think we on this court are familiar with the background. So certainly use the facts during your argument as you need to. But I would suggest that maybe you start with 1 of the issues please. The main issue in this case, judge, is the deficient search warrant that was presented to the judge, the Honorable Christopher W. Pratt. The main issue is that the search warrant desired to enter Mr. Bennett's home and to just take photographs generally of the kitchen. The incident, which occurred on August 1st, was in relation to a victim by the name of Shannon Dean, who entered the residence without permission and consent of Mr. Bennett. When in there, a brief altercation occurred, Ms. Dean had left, and she eventually had told an officer by the name of Officer Hollensteiner about the particular incident that occurred. So essentially, what was being investigated was a domestic violence matter. When the affidavit and the complaint was presented to the judge in this case, it didn't have any details concerning evidence that might be actually discovered at the scene. Well, counsel, when a case goes to trial, certainly we know there are generally photographs provided of the scene of the incident to provide at least a context or some background for witnesses' testimony. In this particular situation, how could the state have obtained such photographs here without a search warrant for the defendant's home? How could they have obtained photographs without a search warrant? How could they have gone in? This was the defendant's home without a search warrant. I think that, I understand that, Justice Enoff, but I think the issue is mostly what would have been discovered at the defendant's home that would have been a basis for the search warrant. The statute's pretty straightforward in terms of requesting, you know, listing items to be seized that might be evidence in the commission of a crime. Here we've got an aggravated domestic battery to a pregnant person. So when this investigation took place and the interview of the alleged victim took place, there was no evidence at all that there might be evidence of a crime there, especially 13 days after when the alleged incident had occurred on August 1st. On August 10th is when the interview took place, and on August 14th is when the search warrant was signed. Well, we know that Section 108.3.A.1 has language in it that talks about grounds for a search warrant to be issued, and that's what we're talking about here. And it says, in part, upon the written complaint, which states facts sufficient to show probable cause and which describe the place or person or both to be searched and the things to be seized, any judge may issue a search warrant, or a search warrant, and then in Sub 1, for the following, any instruments, articles, or things which have been used in the commission of, and here's the language I'm focusing on, or which may constitute evidence of the offense. So that's what this search warrant was all about, was it not? I believe the search warrant was about entering the kitchen, but there were no, there was nothing in the complaint or the affidavit that would have, which would have given a basis to the judge to allow or to have him understand that there would be evidence of a crime located in the kitchen. The general nature of taking photographs seems to be more of an exploratory hunt than it is actually looking for specific evidence of a crime. There was no evidence that there was blood splatter, that there was a broken chair, or there might have been something that would have corroborated the victim's statement that evidence would be located there. It seemed to me that there was an underlying intention, especially since the record is pretty straightforward, that Officer Hollensteiner had previously investigated the defendant, that he was actively talking to the victim, requesting information about Mr. Bennett's activities within his home, and when she had contacted him in order to sort of, in order to advise him of the domestic battery, he sort of used that as a basis to obtain a search warrant, but the search warrant was simply to take photographs, not to take photographs of things or items that might have corroborated the victim's statement. One of the bigger issues and one of the cases that was cited by the appellee in this case was United States v. Anderson. I thought it was interesting because when trying to search for precedent on this matter, there didn't seem to be a lot in terms of the strict reading of the statute as it applies to just merely taking photographs of a residence. In this particular case, which I think is somewhat a first impression as far as just simply taking photographs of a crime scene without providing more, the United States v. Anderson case I thought was actually helpful for our side because there were items that were listed and that the photographs that were authorized to be taken and the measurements that were authorized to be taken were taken of the things specifically listed in the search warrant. There was probable cause to believe that a crime was committed in the kitchen area. Is that correct? Well, it's based on the victim's statements. If those are credible, then the issuing judge could issue a warrant. Stopping there, not what's to be photographed, but just stop there. You agree? I don't. I don't agree, but I know the result was that there was a plea of guilty to a stipulated bench trial. So she says this aggravated domestic battery occurred in the kitchen. And she's viewed to be credible, for whatever reason, and that's submitted to a judge. Forgetting what the crime is, was there probable cause to believe that a crime occurred in the kitchen? I think based on what was presented to the judge, there was probable cause to believe that maybe a crime had occurred. Okay, okay. Now, you're saying that the search warrant or the warrant would have been okay if there was evidence that there was a broken drawer or potentially a blood splatter or she was bent over a counter in order to strangle her or commit the battery. That would need to be included in the application. I agree with that. Well, the question is then, if this was a pretext, why is that bad? Explain to us why the police are prohibited. I think if when there's clearly a crime that's been committed, at least probable cause to believe it is, and they hope to find whatever they can find. I think that the pretext is problematic because it opens up the door for dangerous precedent. When anybody alleges that an altercation occurs, whether there's probable cause or not, we then take that information for an exploratory or general search of one's privacy in their home with the intention of looking for something else other than actually investigating. Yeah, but it isn't exploratory. It's of the kitchen. Sure, but it's also going to involve at least an entrance into the house and a protective sweep, which would be permitted. I mean, the officers in the record, they had observed, after they had already obtained the search warrant as well as the arrest warrant, they surveilled Mr. Bennett's home. They saw an individual leave the home. They made a traffic stop on the individual. They had a free dog sniff, which means they were clearly looking for evidence of drug activity. Then they went and executed the search warrant in the home. I think the goal here was to obtain information related to Bennett's drug dealing activities more than a domestic battery. Fourteen days after an alleged domestic battery with, as you stated, no other information as to a broken chair or possibly blood on the ground or evidence that might have been found there fourteen days after was certainly going to be unlikely. What's your best case that would prohibit this? To be fair with you, Justice, I don't necessarily think there is a great case for this. I believe the Anderson case is probably the closest case that I could find or review that deals directly with the taking of photographs of a residence. But again, it was taking photographs of the items listed, and they were particularly described. True. So that case is really distinguishable, right? That's not the same as our situation. It is distinguishable. And then going back to what you were saying just a couple minutes ago, the sequence wasn't exactly, at least as I recall, as you described it, because the police, after they got the warrant, surveilled the defendant's home, saw the defendant come out and go in, and then saw another person come out and go in about 10 or 15 minutes later, and then they decided to follow that person and made the traffic stop and then conducted this traffic stop in a way that they felt was appropriate, and then went back. And I guess coming back to Justice Connacht's question, I mean, there is nothing that I have seen that says that there's anything wrong with the pretext if there were one. And I'm not sure there is one here, nor did you amplify on that in any way in your brief or give us any case law with respect to that. So I'm not sure what you're relying on in indicating that there couldn't be a pretext if there were one. Well, the reason why I mentioned the pretext, Justice, is because it was mentioned in one of the court orders that sort of this was a pretextual search of the defendant's home. I think our issue is mostly in line with the generalization of taking photographs of a kitchen without there being anything contained in an affidavit or a search or the complaint that would indicate there would be any evidence of a crime whatsoever located in the kitchen, regardless of that's where the actual crime or alleged crime took place. Well, I mean, the trial court felt that certainly indicating that photographs were needed to find the evidence or see what evidence there was, was sufficient. I understand that the trial court felt that way. Unfortunately, the way that I view it is, is the strict reading of the statute is to particularly describe those items that might be there. We're looking for evidence of a crime. And 14 days thereafter, and of course, I know that this wasn't necessarily raised, but the likelihood of evidence being contained within the residence without anything more is extremely unlikely. And the fact that, you know, the taking of photographs is so general, does that mean that I can take photographs of inside the refrigerator? Can I go into the cupboards? Can I take a picture of inside the cookie jar? These are questions that are sort of left up now to officer discretion, which I think is pretty, you know, which opens the door for them to make that determination and not necessarily direct their advances or their intentions to carry out the search warrant and then exit at Mr. Bennett's home. I think it was obvious based on the complaint that there would be no evidence of any domestic violence or domestic battery there. Well, I'm not so sure when, I mean, we heard, the trial court heard for issuance of the warrant, the fact that there had been a complaint with respect to a domestic battery. And again, as Justice Knapp pointed out, that has to do with probable cause. But we also know there was an arrest warrant issued here that allowed the police to go in and arrest him and conduct, as you had referred to, the protective sweep of the premises. And it was there and then getting a second warrant that they came up with and were able to seize the drug paraphernalia and the drugs. Correct? That is correct. There was a protective sweep. I know, again, once again, I know the issue was raised by the appellee in this matter. I believe that at least the initial sweep didn't necessarily, I guess if I take it back, if we're doing just a protective sweep, we're looking for individuals that may cause harm to officers or pose some sort of danger. I'm not sure that necessarily looking behind a freestanding bar briefly to see that there's no individuals that may launch an attack on a respective officer is necessary. And looking then into boxes and seeing loose cannabis on top of the freestanding bar is necessarily illegal and or a basis for a continued search or to obtain a new search warrant. Without having the search warrant in the officer's hands, I don't think that, I think once they make the arrest warrant, they do their protective sweep, they then exit the residence. But because the search warrant was in the officer's hands and they were executing the search warrant that allowed them more time than necessary to do a protective sweep, inspect the kitchen and sort of focus their attention to things in the kitchen. Well, the protective sweep was such that they went into, this was a very small premises, they went in to look very briefly, their guns were drawn, they had flashlights and this was small premises, they poked their heads in or looked in each of the rooms to see if there was an individual, anyone else there. I mean, mind you, we had seen and part of the record is somebody had come in and gone out and then they left for a period of time. So how would the police know if somebody else had come into this premises while they were gone making their traffic stop? So, I mean, this was a pretty quick, small premises, very quick, poked their head in and out, they saw the defendant come out of the bedroom, so they knew there was another room. So you're not contending that the protective sweep lasted too long, correct? I mean, we know we've got Maryland versus our Supreme Court case that- to search the home, that's why their presence in the home was longer than what would have been necessary for just the protective sweep because they were in fact still searching or taking photographs of the kitchen pursuant to the search warrant. Right, but then they got a second warrant, correct? They did. After they saw everything in plain view. Well, it's clear the trial court understood the issue. Would you agree? I don't like how he ruled, but he understood. He said if this was a protectual stop of the automobile and then a protectual seeking of the warrant, that's okay. I know that a protectual traffic stop is sufficient. I'm not necessarily sure a protectual search warrant is okay. Well, yeah, I understand that, but I'm saying the trial court said it was. They did say that, yes. Yeah, so we know that the trial judge understood the issue. Correct. And then it's your job to persuade us that the use of this protectual means is bad, bad for jurisprudence, bad precedent. I believe it is. Yeah, I believe it is. I think it opens up the floodgates for police activity to seek out any and all potential violations and or allegations. Go obtain a search warrant any time there's an altercation inside of a residence or in a business or in a garage. We're going and obtaining a search warrant even though we don't believe or we don't have a good faith basis that there might be evidence of a crime there, but using it as a pretext so we can go search for other drugs or contraband without having an individual actually tell us, hey, this is where the cannabis is or this is where the illegal narcotics are. It's located because the threshold or the hurdle that the police have to get over in order to get a search warrant to search for a specific thing is fairly high, such as when a confidential informant is required to sign an affidavit stating that, hey, I paid him the money, I saw him go into his room, into the closet on the top of the shelf underneath several boxes, that's where the drugs are located. So then the officer then goes obtains a search warrant saying that I've got a confidential informant, he's bought drugs four or five times from this particular individual, he knows that it's in the closet on the top shelf below this. That standard is much higher than somebody simply saying, hey, this altercation took place and police using that sort of as a basis to say, hey, we're just going to go take photographs of the house because they said that there was this battery or domestic battery that took place. I think that that is right for the floodgates to open. And I think here, I don't think we're looking for evidence of a domestic battery. I think we're looking for evidence for other things and circumventing the normal procedures by, for instance, he pulled over Mr. Terry Sanders, he comes out of the house, they obviously assumed that there was drug activity going on there. So what they tried to do was pull Mr. Sanders over and get him to admit that he just purchased drugs from inside the house. I'm not sure why that was necessary prior to executing the search warrant and the arrest warrant, but it certainly seemed like they didn't feel like they had enough to go in there and search the house for drugs, even though that was the main intention. Well, I mean, is it your position that this first search warrant should have specified each item that the officers expected to find in the defendant's kitchen and in the home and every angle from which they needed to take a photograph? Yes. I believe that there should have been a detailed description of actual items, tangible items, things that were affixed to the property that would have been evidence of a crime. So that scope could be narrowly tailored to direct the police officers to not- How would they know that council before they went in to look for evidence? Because it would have been attached to the affidavit and the complaint stating that, there was- Where would they have gotten the information? From the victim. Well, so depending on how much a victim can tell them? If the victim says that I woke up and there was a broken chair in Mr. Bennett's kitchen, then it would have made sense to list that chair as an item to be seized and or inspected during the search because then they would have looked for that, that would have corroborated the affiant story about what happened. Okay. Thank you. You'll have time on rebuttal. I think we're a little bit over. Thank you, Justice. All right. Ms. Connelly. Yeah, please, the court, counsel. There's three bases for this court to affirm the trial court's decision in this case. The search warrant particularly described the defendant's residence and the items to be seized. The officers also, as you mentioned, secured an arrest warrant for the defendant that allowed them to enter the defendant's residence at that time. And also we submit that the good faith exception is applicable in this case. Now, there's been a lot of talk about this pretextual search that the officers allegedly conducted. First of all, there's been no evidence presented whatsoever to suggest that the officer's motivation in this case was pretextual. In fact, what happened in this case is the officers had secured an arrest warrant in this case. And along with the rest warrant, they had secured a search warrant. The arrest warrant allowed the officers to enter the defendant's residence. They knew the defendant was inside their residence based upon their observation, their surveillance of the defendant's residence leading up to this. So that allowed the officers to enter the defendant's residence to arrest the defendant. In conjunction with this arrest warrant, the officers secured a search warrant. And the warrant in this case was very, very limited. They had received information from the victim in this case. The defendant has never suggested that there was not probable cause in this case based upon the information that the victim supplied to the officers in this for the execution of the search warrant. So in conjunction... So here we're talking about two different issues, probable cause and particularity of the search warrant. Is that correct? Correct. And they've never challenged the probable cause. Right. There is no challenge with respect to the probable cause. So with respect to the warrant, we know that there has to be sufficient particularity. How did this search warrant meet that requirement? So what the defendant is suggesting is that the standard is that there has to be minute and detailed descriptions of the items to be seized. And there is clear case law that says that that is not required. What is required is that the items must be definitively described so that the officers searching will not seize the wrong property. So the test for the sufficiency of the description in a search warrant is whether it leaves the executing officer no doubt and no discretion as to the items to be seized. That's the test. The defendant is suggesting that minute details must be submitted as part of the search warrant. And that's exactly what is not required. And in fact, the Anderson case that I cited to specifically finds that, says it would have been impractical. I'm sorry to interrupt, but Anderson is distinguishable, is it not? There were items specifically listed in that search warrant. Correct. There weren't any. Right. That is, to be honest with you, that is the only case I have found that discusses this particular issue. And in that context, it had that there were items specifically listed, but there were also, there was a line item in the search warrant that said, photographs and measurements. That's what they sought to do in conjunction with the items that wanted to be seized. And when the court looked specifically to the issue of the particularity requirement for a search warrant, as to the photographs and measurements that the police officers wanted to take in that case, they found that no further detail was necessary because the officers could not have, as they said, it would have been impractical to predict and itemize before what beforehand, what particular photographs and measurements might have have evidentiary value. That's exactly what happened in this case. The defense in their motion conceded that the abuse to the victim occurred in the kitchen in this case. So when you have abuse cases, and in these type, in particular domestic violence cases, you have typically photographs of the scene. That's exactly what the officers wanted to provide for trial in this case. They wanted to provide photographs that could corroborate the victim's testimony as to what happened. And that there is nothing more that the state is required as far as in the search warrant to meet the particularity requirement for the search warrant for the execution of getting the photographs in this case. Again, you had the arrest warrant that allowed the officers to go in there separate and apart from the search warrant. And the search warrant was very limited. It was only to take photographs, and it was only to take photographs of the kitchen. There is no doubt, there was no discretion to the officers as to what they were permitted to do. And in fact, when they went into that home, that's exactly what they did. They went in there, they did a protective sweep, they saw some items that were adjacent to the defendant when they did their protective sweep, which the trial court found was proper for them to be able to see those items during the protective sweep and executing the arrest warrant in this case. And as a result of that, they then stopped what they did, and they went and secured a second search warrant so that they could then obtain these items that they saw as a result of their, the proper actions they took in executing the arrest warrant and the search warrant in this case. This was not a generalized search. It narrowly confined the officers' actions in this case. The officers followed those actions. The search warrant had probable cause. It met all the other requirements for a proper search warrant, and that's exactly what happened in this case. And the defendant submits, he has, there's no case law suggesting that a search warrant does not meet the particularity requirement if it does not list what he consists to be tangible items. There is nothing to say that this hair has to be tangible items. And as Your Honor pointed out, Section 108 of the Illinois Code of Criminal Procedure is much broader than merely allowing for the seizure of tangible objects. And it allows for the seizure of items including things which may constitute evidence of the offense outlined in the warrant. And that's exactly what the photographs would have done in this case. There were things which would constitute evidence of. Those would be evidentiary items that the prosecution could submit at a trial in support of the testimony of the domestic violence victim in this case. As far as, so this court could affirm on this basis and find that the search warrant was proper in this case. This court could also find that the officers were otherwise permitted to enter the defendant's resident at the time when they secured an arrest warrant for the defendant. As courts have held, a search warrant is not required to permit the officers to enter a suspect's residence to arrest a suspect. And it is enough that the officers had an arrest warrant, which was founded on probable cause, which is not being challenged in this case, which implicitly carries with it the limited ability to enter a dwelling in which the lives. And there's been no evidence otherwise that everyone knew that the defendant had lived there based upon the evidence that the officers already had. And when there is reason to believe that the suspect is within that residence and based upon the surveillance of the officers leading up to the search warrant, which is pretty typical, they do usually do a surveillance to make sure that what they know what they're entering when they execute the search warrant. They knew the defendant was inside this residence. That was enough to allow the officers to enter the residence. And then as the third district in People v. Jordan held in 2021, we are aware of no Illinois authority requiring law enforcement to have anything other than an arrest warrant and reason to believe that the suspect is within in order to enter a suspect's residence to execute an arrest. And that is simply what happened in this case. All the facts in this case meet those requirements. The officers had the arrest warrant. There's been no dispute about that. The officer had a reasonable belief that the defendant was inside the residence based upon the information that they had from the victim in this case and their surveillance. The officers then when executing their arrest warrant, the police were allowed to conduct a protective sweep of the home, which immediately following the defendant's arrest. The defendant was arrested within the area of the kitchen. They did a protective sweep of the area adjacent to the defendant to make sure that to provide for officer safety in this case. And it's pointed out that the defendant in this case, the officer should have been concerned about their safety because the defendant had two prior convictions in this case for gun offenses. He had a conviction for unlawful use of a weapon by a felon, and he also had a conviction for attempt firearm trafficking. There should have been a concern for the officers in this case as far as their safety. So the officers then did that protective sweep and found additional items and then stopped before securing a second search warrant. That was a second basis in order to uphold what the officers did in this case. The third way in which the officer's conduct could be upheld in this case is under the good faith exception. The good faith exception is applicable when law enforcement acted with an objectively reasonable good faith belief that their conduct was lawful and when their conduct involved only isolated negligence. The test in this case is whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances. Section 114 of the Illinois Code of Criminal Procedure defines good faith as obtaining evidence pursuant to a search warrant obtained from a neutral and detached judge. We have that in this case. There's never been any suggestion otherwise. And the warrant is free from obvious defects other than non-deliberate errors in preparation. The only error is that they had listed specifically in this case what they wanted to do and there was no suggestion there was any misconduct by the officers as far as executing the search warrant in this case and that they went beyond what the search warrant allowed them to do. Well counsel's argument, excuse me, counsel's argument in his reply brief, I think it was at page eight, was that the good faith exception really doesn't apply here because the officer either knew or should have known that this warrant was deficient and specifically because it didn't specify, as we've been talking about, specific items that would be found in the residence with respect to the domestic battery. So, go ahead. Right, but he's suggesting that the officers was engaged in misconduct for failing to list things that there's no evidence that he was aware of. He wants to have specificity as to whether or not there was a chair, a broken chair, or blood or anything. There is no evidence that there was any of this happened. So, how could there be misconduct on the part of the officer by failing to include information that he wasn't even aware of? There can't be negligence. Under your approach, isn't the search warrant irrelevant given the fact that there was a an arrest warrant which entitled them to do the sweep and see whatever they would see? Correct. Essentially, when I say there's three bases, the good faith basis is really whether or not you find that the search warrant was inadequate in this case. So, but the otherwise, beyond what the search warrant allowed the officers to do, the officers were allowed to enter this residence based upon the arrest warrant in this case. So, the search warrant is really not necessary. I would suggest you only need to look at the search warrant in order to uphold the officer's conduct in this case because they otherwise had a valid arrest warrant. You're talking about the first search warrant, not the second. Yes, first search warrant. Correct, because that's the only challenge in this case is to the first search warrant. So, you know, the defendant has not really emphasized the fact that there is an arrest warrant in this case because it really hurts them. The arrest warrant allows the officers to enter the defendant's home. There was sufficient patience. There's never been a challenge to that. And based upon that, the officer's conduct could be upheld separate and apart from the challenge that the defendant makes to the search warrant in this case. As to the good faith exception in this case, you know, the search warrant was based on probable cause. And as I've said, that's not being challenged. We submit that the search warrant properly listed the area to be searched and the items to be seized with enough specificity. There's been no finding of any alleged false statements in the affidavits by the officers. And there's been no showing that the issuing judge abandoned its judicial role in signing the search warrant in this case. So, based upon these three bases, we would ask that this court affirm the trial court's decision in this case to deny the defendant's motion to coerce arrest and suppress evidence. Thank you. Thank you. Mr. Rober? Just briefly, Justice, in addressing a couple of the points. Number one, and I agree with the appellee, there's not a lot of case law directly on this particular issue. And I think the only reason why there is one in the United States v. Anderson case is because it points directly to the ability to take photographs of the items listed. I think that the issue that's presented before the court today is a significant one. I think just on the issue of the search warrant itself, because it pretty much opens up the door for anybody that says, hey, in the house that an altercation took place, it took place upstairs, it took place downstairs. And that's a basis to go ahead and obtain photographs of the entire house and search it. Why do we even reach that issue? Why isn't the arrest warrant what we should be focusing on? And that's what prompted the discovery of a lot of evidence. I tend to disagree. I don't know if it was the sweep that went ahead and actually caused officers. Now, of course, there was no evidence because there were no hearing on the observation of the knife, for instance, in the kitchen may not have been observed or found had it not been for specifically the search warrant authorizing the search of the kitchen with the photographs. When they came through, if you watch the body camera footage, they seemed to move fairly quickly through the house to make sure that there was nobody in there. They went upstairs, they went into the back rooms, and then they reconvened at the front where Mr. Bennett had been placed under arrest. I'm not sure that they would have taken a detailed look at all the items that were in the kitchen, the different items that were sitting. There was like five or six items sitting up against near the sink, which I think is where the knife was located. They picked up the knife, manipulated the knife to find out that it perhaps wasn't an actual legal knife, at least for purposes of Mr. Bennett possessing it. I think there was more intention there because it was a search warrant. Even when they actually searched the house, he had started off by saying search warrant, not arrest warrant. The intention was to go in. They huddled around into the front living room area where they made entrance. Actually, I'm sure you've listened to the body camera footage. Officer Hollensteiner is heard saying, did you find anything else? Because really the scope of the search was simply to take photographs, but it was fairly obvious that based on the conversations and the body camera footage that they were looking for other things. I'm not necessarily sure that the immediate plain view observation of loose and or half-used cannabis was necessarily a basis to get the second search warrant until they had looked in depth behind the freestanding bar and pulled out the and looked in the box and so on and so forth. Well, a switchblade and loose cannabis were clearly seen by the officers. What else was seen by them during the sweep before they even reconvened? Does the record show that? Could you repeat that question? Yes. What else was seen by the officers in plain view before they convened back in the kitchen and decided they were going to look further? I believe that the loose cannabis and looking behind the bar was the first thing that they had observed when they had made entry into the house and placed Mr. Bennett under arrest. I believe that after the protective sweep had occurred is when the knife, which was closed and wasn't readily apparent other than one of the officer's testimony that he had knew what type of model and make the particular knife was, it had to be manipulated and touched before the spring loaded knife was readily identifiable. But before then, just the loose cannabis and I believe a box that had indicated that there was like vape cartridges or something to that effect inside of it. And I think they had seen maybe some baggies and things of that nature, but that was behind and underneath the bar. So you don't think a police officer could observe a knife and immediately suspect that it was spring loaded? Well, during the actual hearing on that matter, it was argued that the knife was not actually the knife that the officer had identified it as, but it was in fact, once he had picked it up and manipulated it, that's when it was discovered that it was in fact a spring loaded knife. But it took the picking up of it and the manipulation of that particular knife to find out that that's what its identity was. Thank you. Thank you, Justice. All right. I think your time is up, counsel. At this time, the court will take the matter under advisement. The court thanks both of you for your arguments this morning. We will render a decision in due course. Court stands in recess at this time.